_____

**SO ORDERED,**

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**
_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

**IN RE: DAREL WAYNE NICHOLSON**

**CASE NO.: 20-10869-SDM**

**DEBTOR**  **CHAPTER 12**

**ORDER OVERRULING CHAPTER 12 TRUSTEE'S OBJECTION TO CHAPTER 12 PLAN OF REORGANIZATION AS TO COMPENSATION ONLY**

THIS CAUSE came before the Court for hearing on October 20, 2020 on the Debtor's proposed *Chapter 12 Plan of Reorganization* (the "Chapter 12 Plan")(Dkt. #24) and the Chapter 12 Trustee's (the "Trustee's") *Objection to Chapter 12 Plan of Reorganization* (the "Objection to Confirmation")(Dkt. #32). At the hearing, the parties represented to the Court that most, if not all, issues or objections related to the Debtor's Chapter 12 Plan were resolved except for the Trustee's compensation. At the conclusion of the hearing, the Court took that issue under advisement. The Court is now prepared to rule.

The issue before the Court is whether nondebtor, third-party entities (which are owned and controlled by the Debtor) should be allowed to pay a portion of the Debtor's secured claims

directly. If so, the Trustee would be prohibited from collecting its statutory compensation (or up to 10 percent "commission") on those direct payments.[1] According to the Debtor's Chapter 12 Plan, Class 3.2 consists of secured claims by the Bank of Okolona (the "Creditor") against the Debtor's homestead and equipment owned by a third-party entity, DTN Cattle Farm, LLC ("DTN"). Class 3.3 consists of secured claims by the Bank of Okolona against a Polaris Ranger, a Yamaha 700, and equipment owned by another third-party entity, Nicholson Farms, LLC ("Nicholson Farms"). So not only do Classes 3.2 and 3.3 contain secured claims against the Debtor's property but also against property owned by DTN and Nicholson Farms.

The Debtor's payment method for the above classes of claims is at the heart of the instant dispute. While unclear from the Debtor's Chapter 12 Plan, the Debtor clarified at the hearing that the he intends to pay a portion of secured claims in Class 3.2, i.e., his homestead, through the Trustee's office. Those payments and ultimate distributions to the Creditor would be subject to the Trustee's statutory compensation.[2] But as to the portion of the secured claims against equipment owned by DTN and Nicholson Farms in Classes 3.2 and 3.3, the Debtor intends for those entities to make payments directly to the Creditor.

The Debtor's argument is simply that he should not be required to pay the Trustee's statutory compensation for payments made directly by DTN and Nicholson Farms. In support of his position, the Debtor points the Court to a case decided by another bankruptcy court in the Northern District of Mississippi: *In re George A. Speir*, 2018 WL 3814276 (Bankr. N.D. Miss.

---

[1] This Court agrees with a majority of other courts that a trustee is not entitled to receive statutory compensation under 28 U.S.C. § 586(e)(2) when a debtor makes payments directly to a creditor. *See In re George A. Speir*, 2018 WL 3814276 at *1 (Bankr. N.D. Miss. Aug. 8, 2018)(discussing the majority approach based on the plain language of 28 U.S.C. § 586(e)(2)).

[2] The Debtor also noted at the hearing that he is proposing to pay all other classes of claims in the Chapter 12 Plan (Classes 1, 2, 3.1, 4, 5.1, 5.2, and 6) through the Trustee's office.

Aug. 8, 2018). In that case, the court considered the issue of whether a Chapter 12 debtor—under the specific circumstances presented there—*could* make payments directly to his creditors and thereby avoid paying the trustee's statutory compensation. *Speir*, 2018 WL 3813276 at *1. The court discussed several approaches used in other jurisdictions, adopted at least a dozen factors outlined in *In re Pianowski*, 92 B.R. 225 (Bankr. W.D. Mich. 1988), and found that the debtor could make direct payments to his secured creditors except for one: the largest secured creditor whose claim was substantially modified through the bankruptcy process to the debtor's benefit. *Id.* at *1-8.

The Trustee acknowledges the central holding in *Speir* but disagrees with the Debtor's application to the circumstances currently before this Court. Specifically, the Trustee argues that the court in *Speir* only considered whether the debtor, himself, could make direct payments to creditors as opposed to nondebtor, third-party entities who the Debtor would prefer make the payments directly in this case. The Trustee argues that these entities, which are wholly owned by the Debtor, also benefit from the reorganization and modification of the Creditor's secured claims. The Trustee also makes similar arguments to those he made in *Speir*. The Trustee's office depends on the statutory compensation to operate and receives no financial assistance from the United States Trustee's office. While the Trustee in this case did receive some funds from the Paycheck Protection Program[3], which helped keep his office afloat, $3,800.00 can only go so far. Basically, allowing the Debtor to circumvent the Trustee's typical distribution process (even on the

---

[3] As a result of the COVID-19 pandemic, the Paycheck Protection Program (the "PPP") offered loans to small businesses through the Small Business Administration and was designed to help keep employees on their payroll. If certain criteria are met, the PPP loans are eligible for forgiveness.

equipment portions of the secured claims) would significantly impact the Trustee's operating ability.

The Court has considered all the parties' relevant legal and factual arguments and reaches its conclusion that the nondebtor, third-party entities, DTN and Nicholson Farms, should be allowed to make payments directly to the Creditor for its collateral in Classes 3.2 and 3.3. The Court adopts the approach taken by the court in *Speir* that a determination of whether payments should be made directly must be made on a case-by-case basis. And the best way for this Court to make that determination is the use of the *Pianowski* factors. Those factors are:

1. the past history of the debtor;

2. the business acumen of the debtor;

3. the debtor's post-filing compliance with statutory and court-imposed duties;

4. the good faith of the debtor;

5. the ability of the debtor to achieve meaningful reorganization absent direct payments;

6. the plan treatment of each creditor to which a direct payment is proposed to be made;

7. the consent, or lack thereof, by the affected creditor to the proposed plan treatment;

8. the legal sophistication, incentive and ability of the affected creditor to monitor compliance;

9. the ability of the trustee and the court to monitor future direct payments;

10. the potential burden on the Chapter 12 trustee;

11. the possible effect upon the trustee's salary or funding of the U.S. Trustee system;

12. the potential for abuse of the bankruptcy system;

13. the existence of other unique or special circumstances.

*Speir*, 2018 WL 3813276 at *5 (citing *Pianowski*, 92 B.R. at 233-34).

Unlike the court in *Speir,* this Court will not undertake an exhaustive analysis of the factors. Generally, the Court finds that no evidence has been presented which would indicate that the Debtor has failed to file his case and propose his Chapter 12 Plan in good faith. Nor has the Court heard any evidence that the Debtor is not capable, based on his management abilities of DTN and Nicholson Farms, of making direct payments to the Creditor. The Court acknowledges that DTN and Nicholson Farms will be the legal "entities" making the direct payments to the Creditor. The distinction between allowing the Debtor to make direct payments and direct payments coming from DTN and Nicholson Farms is, however, nominal. As stated above, both DTN and Nicholson Farms are wholly owned and operated by the Debtor. While the Court understands the legal importance of corporate and limited liability company structures, the practical effect in this case is that the Debtor will be the one making the payments through those entities in his capacity as owner and operator.[4]

The Court can also quickly dispense with some of the other relevant factors. First, the Debtor and Creditor have reached an agreement and are ready to submit an agreed order on the treatment of the Creditor's claims after the Court issues its decision on the Trustee's compensation. Further, the Creditor participated at the hearing and voiced no opinions either way as to whether the Debtor or DTN and Nicholson Farms should pay their claims directly or through the Trustee's office. Finally, there was also no evidence presented that the Creditor or the Trustee's office will be incapable of monitoring the direct payments made by DTN and Nicholson Farms.

---

[4] Despite the Trustee's argument that a distinction should be drawn between allowing direct payments by the Debtor versus DTN and Nicholson Farms, the Court highly doubts the Trustee would object to those entities paying the claims if the payments were being processed through the Trustee's office and disbursed to the Creditor.

The substance of the parties' arguments is focused more on the balance of harms between the Debtor and the Trustee's office, which include the monetary obligations the Debtor would face if he were required to pay all of the secured claims through the Trustee's office versus those the Trustee's office would face if DTN and Nicholson Farms were allowed to pay the Creditor directly. After a review of Proofs of Claims 5-2 and 6-2 filed by the Creditor, the Court sees the monetary benefit the Trustee's office would receive if the Debtor or DTN and Nicholson Farms were required to pay those claims in full through its office. The Court cannot, however, saddle one Debtor and two entities with the obligation of funding the entire Trustee's office. Based on the rough numbers also adduced at the hearing, requiring the Debtor to pay Trustee's compensation on the entire secured claims in Classes 3.2 and 3.3 would greatly impact the ability to fund a feasible plan for this Debtor or any farmer. The Debtor's proposal to pay approximately $140,000.00 on his homestead in Class 3.2 through the Trustee's office, combined with paying the remainder of the classes of claims (Classes 1, 2, 3.1, 4, 5.1, 5.2, and 6) through the Trustee's office, is more than reasonable to this Court.

The Court's ruling may require some additional accounting by the parties in terms of bifurcating the amounts the Debtor must pay through the Trustee's office and the amounts DTN and Nicholson Farms will pay directly. But this fact alone does not dissuade the Court that its ruling is correct. Based on the above, it is therefore ORDERED that

(1) The Trustee's *Objection to Chapter 12 Plan of Reorganization* (Dkt. #32) is OVERRULED as to his compensation only;

(2) The nondebtor, third-party entities, DTN and Nicholson Farms, shall be allowed to pay the Creditor, Bank of Okolona, directly for the portion of the Creditor's claims secured by those entities' collateral; and

(3) The Trustee shall not receive any statutory compensation on direct payments made by DTN and Nicholson Farms referenced in (2) for Classes 3.2 and 3.3.

##END OF ORDER##