**SO ORDERED,**



*Selene D. Maddox*

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN THE MATTER OF: | CHAPTER 12 NO.: |
| DAREL WAYNE NICHOLSON | 20 – 10869 – SDM |

<u>ORDER CONFIRMING THE DEBTOR'S CHAPTER 12 PLAN, AWARDING A
FEE TO THE DEBTORS' ATTORNEY AND RELATED ORDERS</u>

Following the meeting of creditors held pursuant to 11 U.S.C. 341 at which the Debtor appeared telephonically to be examined by creditors and other interested parties. A confirmation hearing was held on October 20, 2020 pursuant to 11 U.S.C. 1224, at which the Trustee appeared telephonically and the Debtor appeared by his attorney telephonically.

At such hearing the following objections to confirmation of the Debtor's Chapter 12 Plan of Reorganization (Docket Number 24) were considered: Objection to Confirmation by Bank of Okolona (Docket Number 33); said Objection being resolved by Agreed Order entered on November 9, 2020 (Docket Number 53); Objection to Confirmation by Chapter 12 Trustee (Docket Number 32); said Objection being overruled as to compensation only by order entered October 29, 2020 (Docket Number 51).

At the hearing the Court considered the matters presented by the Trustee, counsel for the Debtor and by other interested parties, if any, and upon the pleadings and statements of parties and of counsel, and on the evidence presented, and the Court being fully advised finds that the parties agree as follows:

A.  Written notice of the meeting of creditors was held pursuant to 11 U.S.C. 341 and notice of the hearing on confirmation of the plan was given as required by Rule 2002;

B.  The plan as presented for confirmation (hereinafter referred to as "the plan") complies with the provisions of Chapter 12 of Title 11 of the United States Code and the other applicable provisions of said Title;

C.  Any fees, charges or other amounts required under Chapter 123 of Title 28, or by the plan, to be paid before confirmation have been paid;

D.  The plan has been proposed in good faith and not by any means forbidden by law;

E.  The value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under Chapter 7 of Title 11 of the United States Code on such date; and

F. With respect to each allowed secured claim provided for by the plan, the holder of such claim either accepted, or was deemed to have accepted, the plan or in the alternative –

    a)      (i) the plan provides that the holder of such claim retains the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

    b)      the plan proposes to surrender the property securing such claim to the creditor.

G. If the Trustee or the holder of an allowed unsecured claim objected to the confirmation of the plan, then the Court finds that:

    a)      the value of the property to be distributed under the plan on account of such unsecured claim is not less than the amount of such claim, or

    b)      the plan provides projected disposable income, [as 'disposable income' is defined in 11 U.S.C. 1225(2)] to be received by the debtor in the three [3] year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or the value of the property to be distributed under the plan in the three (3) year period, or such longer period as the Court may approve under Section 1222(c) is not less than the Debtor's projected disposable income for such period.

IT IS ORDERED THAT:

1.      The Debtor's Plan is confirmed, with the modifications as specified in the agreed orders and otherwise specified as follows: : Objection to Confirmation by Bank of Okolona (Docket Number 33); said Objection being resolved by Agreed Order entered on November 9, 2020 (Docket Number 53); Objection to Confirmation by Chapter 12 Trustee (Docket Number 32); said Objection being overruled as to compensation only by order entered October 29, 2020 (Docket Number 51).

2.      That the plan is hereby modified to reduce the plan term from five [5] years to three [3] years.

3.      That the claim of Advance Acceptance [Claim 4-2] shall not be paid through the Chapter 12 plan of reorganization. If paid at all, the claim of Advance Acceptance will be paid directly and outside the plan by non-debtor entities.

4.      The Debtor shall pay $3,500 annually to unsecured creditors timely filing claims, with the Trustee to determine the proper percentage to be disbursed.

5.      The Debtor, or his employer, or any entity that owes a debt that is property of the estate shall make the payments to the Trustee required by the plan as confirmed or as hereafter modified by the Agreed Orders attached as Exhibit "A". The payments shall be made by the Debtor to the Trustee as indicated by the payment schedule attached hereto as Exhibit "B". The Trustee is entitled to collect the statutory percentage fee on all payments received under the Chapter 12 Plan and made pursuant to the payment schedule attached hereto as Exhibit "B". The Trustee shall order [per Section 542(b)] or request the Court to order [pursuant to Section 1226(c)] any entity from whom the Debtor received income to pay all or any part of such income to the Trustee.

6.      All property shall remain property of the estate and shall vest in the Debtor only upon dismissal, discharge or conversion. The Debtor shall be responsible for the preservation and protection of all property of the estate not transferred to the Trustee.

7.      The Trustee shall:

    a)      Keep a detailed record of all receipts, including the source or other identification of each receipt, and of all disbursements [11 U.S.C. 1202(b)(1)]; and

| b) | File with the Court, or if applicable, with the entity providing addressing service for the Court and the Trustee, notices of creditor's address changes brought to the attention of the Trustee. [Rule 2002(g)]; and |
| c) | Deposit all funds received by the Trustee under the plan with an entity which provides insurance, guaranties or deposits in the manner prescribed by 11 U.S.C. 345. |

8.      Pursuant to 11 U.S.C. 1226 the order of payment, unless otherwise directed shall be:

| a) | Any unpaid claim of the kind specified in Section 507(a)(1) of Title 11 U.S.C.; |
| b) | The percentage fee fixed for the Trustee pursuant to 11 U.S.C. 1202; |
| c) | Creditors whose claims are timely filed and allowed in such amounts and order of preference as may be provided by the plan or as may be required to provide adequate protection of the interest of any entity with an interest in property of the estate. |

9.      The Trustee, the Debtor and attorney for the Debtor shall examine proofs of claim, or summaries thereof, and shall object to the allowance of improper claims as provided by 11 U.S.C. 704(5).

10.     The Trustee shall at least once yearly provide to the Debtor and the Debtor's Counsel a report showing the funds received and the disbursements made by him since the date of the last report and shall upon completion of the plan file with the Court a final report and account containing or incorporating by reference a statement of receipts and disbursements.

11.     Ninety days after the final distribution, the Trustee shall stop payment of all checks then unpaid and file with the Clerk of the Court a list of the names and addresses, so far as known, of the persons entitled to such payments and the amounts known thereof. The unclaimed funds shall be paid into the Court and disposed of under Chapter 129 of Title 28. [11 U.S.C. 347].

If Applicable:

12.     The Debtor has paid all amounts that are required to be paid under domestic support obligation that first become payable after the date of the filing of this petition as specified in 11 U.S.C. 1225(a)(7).

13.     Upon completion of plan payments provided during the three (3) year term of plan, Debtor shall receive a discharge on all unsecured debts provided for. Upon completion of all payments that exceed the three (3) year term of the plan Debtor shall receive a discharge of said debts.

14.     That, a copy of the Debtor's Chapter 12 Plan of Reorganization is attached hereto as Exhibit "C". This Plan is hereby confirmed, with the modifications listed in the Agreed Orders attached as Exhibit "A" and modifications made herein.

15.     That, all payments will be made by the Debtor in accordance with the Plan attached as Exhibit "C", or the payment schedule attached hereto as Exhibit "B," or as hereafter modified by the Agreed Orders attached as Exhibit "A", or as modified herein. It is ordered that the payments shall be made by the Debtor to the Trustee, Harold J. Barkley, Jr., P. O. Box 5069, Jackson, MS 39296-5069, as indicated by the payment schedule attached hereto as Exhibit "B".

16.     That, this Order shall not become final for a period of 21 days, giving the affected creditor(s) opportunity to object to the entering of same. The Trustee shall mail a copy of this Order to all affected creditors and their attorneys if known, and file a certificate of service with the Court.

ALLOWANCE OF ATTORNEY'S FEES:

That, Debtor(s) Attorney(s) shall hereafter file an Application for an Allowance of Attorneys Fee for representation of Debtor in this cause if any further attorney's fees are sought by Debtor's Attorney.

##END OF ORDER##

APPROVED:

HAROLD J. BARKLEY, JR. – MSB #2008
CHAPTER 12 TRUSTEE
POST OFFICE BOX 5069
JACKSON, MS 39269-5069
PHONE: 601/362-7153
FAX: 601/366-7442
E-MAIL: HJB@HBARKLEY13.COM

CRAIG M. GENO – MSB #4793  WITH PERMISSION
ATTORNEY FOR DEBTOR

JAMES P. WILSON, JR. – MSB #10783
ATTORNEY FOR BANK OF OKOLONA

**SO ORDERED,**

Selene D. Maddox

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

IN RE: DAREL WAYNE NICHOLSON

CASE NO.: 20-10869-SDM

**DEBTOR**                                      **CHAPTER 12**

## <u>ORDER OVERRULING CHAPTER 12 TRUSTEE'S OBJECTION TO CHAPTER 12 PLAN OF REORGANIZATION AS TO COMPENSATION ONLY</u>

THIS CAUSE came before the Court for hearing on October 20, 2020 on the Debtor's proposed *Chapter 12 Plan of Reorganization* (the "Chapter 12 Plan")(Dkt. #24) and the Chapter 12 Trustee's (the "Trustee's") *Objection to Chapter 12 Plan of Reorganization* (the "Objection to Confirmation")(Dkt. #32). At the hearing, the parties represented to the Court that most, if not all, issues or objections related to the Debtor's Chapter 12 Plan were resolved except for the Trustee's compensation. At the conclusion of the hearing, the Court took that issue under advisement. The Court is now prepared to rule.

The issue before the Court is whether nondebtor, third-party entities (which are owned and controlled by the Debtor) should be allowed to pay a portion of the Debtor's secured claims

**EXHIBIT "A"**

directly. If so, the Trustee would be prohibited from collecting its statutory compensation (or up to 10 percent "commission") on those direct payments.[1] According to the Debtor's Chapter 12 Plan, Class 3.2 consists of secured claims by the Bank of Okolona (the "Creditor") against the Debtor's homestead and equipment owned by a third-party entity, DTN Cattle Farm, LLC ("DTN"). Class 3.3 consists of secured claims by the Bank of Okolona against a Polaris Ranger, a Yamaha 700, and equipment owned by another third-party entity, Nicholson Farms, LLC ("Nicholson Farms"). So not only do Classes 3.2 and 3.3 contain secured claims against the Debtor's property but also against property owned by DTN and Nicholson Farms.

The Debtor's payment method for the above classes of claims is at the heart of the instant dispute. While unclear from the Debtor's Chapter 12 Plan, the Debtor clarified at the hearing that the he intends to pay a portion of secured claims in Class 3.2, i.e., his homestead, through the Trustee's office. Those payments and ultimate distributions to the Creditor would be subject to the Trustee's statutory compensation.[2] But as to the portion of the secured claims against equipment owned by DTN and Nicholson Farms in Classes 3.2 and 3.3, the Debtor intends for those entities to make payments directly to the Creditor.

The Debtor's argument is simply that he should not be required to pay the Trustee's statutory compensation for payments made directly by DTN and Nicholson Farms. In support of his position, the Debtor points the Court to a case decided by another bankruptcy court in the Northern District of Mississippi: *In re George A. Speir*, 2018 WL 3814276 (Bankr. N.D. Miss.

---

[1] This Court agrees with a majority of other courts that a trustee is not entitled to receive statutory compensation under 28 U.S.C. § 586(e)(2) when a debtor makes payments directly to a creditor. *See In re George A. Speir*, 2018 WL 3814276 at *1 (Bankr. N.D. Miss. Aug. 8, 2018)(discussing the majority approach based on the plain language of 28 U.S.C. § 586(e)(2)).

[2] The Debtor also noted at the hearing that he is proposing to pay all other classes of claims in the Chapter 12 Plan (Classes 1, 2, 3.1, 4, 5.1, 5.2, and 6) through the Trustee's office.

Aug. 8, 2018). In that case, the court considered the issue of whether a Chapter 12 debtor—under the specific circumstances presented there—*could* make payments directly to his creditors and thereby avoid paying the trustee's statutory compensation. *Speir*, 2018 WL 3813276 at *1. The court discussed several approaches used in other jurisdictions, adopted at least a dozen factors outlined in *In re Pianowski*, 92 B.R. 225 (Bankr. W.D. Mich. 1988), and found that the debtor could make direct payments to his secured creditors except for one: the largest secured creditor whose claim was substantially modified through the bankruptcy process to the debtor's benefit. *Id.* at *1-8.

The Trustee acknowledges the central holding in *Speir* but disagrees with the Debtor's application to the circumstances currently before this Court. Specifically, the Trustee argues that the court in *Speir* only considered whether the debtor, himself, could make direct payments to creditors as opposed to nondebtor, third-party entities who the Debtor would prefer make the payments directly in this case. The Trustee argues that these entities, which are wholly owned by the Debtor, also benefit from the reorganization and modification of the Creditor's secured claims. The Trustee also makes similar arguments to those he made in *Speir*. The Trustee's office depends on the statutory compensation to operate and receives no financial assistance from the United States Trustee's office. While the Trustee in this case did receive some funds from the Paycheck Protection Program[3], which helped keep his office afloat, $3,800.00 can only go so far. Basically, allowing the Debtor to circumvent the Trustee's typical distribution process (even on the

---

[3] As a result of the COVID-19 pandemic, the Paycheck Protection Program (the "PPP") offered loans to small businesses through the Small Business Administration and was designed to help keep employees on their payroll. If certain criteria are met, the PPP loans are eligible for forgiveness.

equipment portions of the secured claims) would significantly impact the Trustee's operating ability.

The Court has considered all the parties' relevant legal and factual arguments and reaches its conclusion that the nondebtor, third-party entities, DTN and Nicholson Farms, should be allowed to make payments directly to the Creditor for its collateral in Classes 3.2 and 3.3. The Court adopts the approach taken by the court in *Speir* that a determination of whether payments should be made directly must be made on a case-by-case basis. And the best way for this Court to make that determination is the use of the *Pianowski* factors. Those factors are:

1. the past history of the debtor;

2. the business acumen of the debtor;

3. the debtor's post-filing compliance with statutory and court-imposed duties;

4. the good faith of the debtor;

5. the ability of the debtor to achieve meaningful reorganization absent direct payments;

6. the plan treatment of each creditor to which a direct payment is proposed to be made;

7. the consent, or lack thereof, by the affected creditor to the proposed plan treatment;

8. the legal sophistication, incentive and ability of the affected creditor to monitor compliance;

9. the ability of the trustee and the court to monitor future direct payments;

10. the potential burden on the Chapter 12 trustee;

11. the possible effect upon the trustee's salary or funding of the U.S. Trustee system;

12. the potential for abuse of the bankruptcy system;

13. the existence of other unique or special circumstances.

*Speir*, 2018 WL 3813276 at *5 (citing *Pianowski*, 92 B.R. at 233-34).

Unlike the court in *Speir,* this Court will not undertake an exhaustive analysis of the factors. Generally, the Court finds that no evidence has been presented which would indicate that the Debtor has failed to file his case and propose his Chapter 12 Plan in good faith. Nor has the Court heard any evidence that the Debtor is not capable, based on his management abilities of DTN and Nicholson Farms, of making direct payments to the Creditor. The Court acknowledges that DTN and Nicholson Farms will be the legal "entities" making the direct payments to the Creditor. The distinction between allowing the Debtor to make direct payments and direct payments coming from DTN and Nicholson Farms is, however, nominal. As stated above, both DTN and Nicholson Farms are wholly owned and operated by the Debtor. While the Court understands the legal importance of corporate and limited liability company structures, the practical effect in this case is that the Debtor will be the one making the payments through those entities in his capacity as owner and operator.[4]

The Court can also quickly dispense with some of the other relevant factors. First, the Debtor and Creditor have reached an agreement and are ready to submit an agreed order on the treatment of the Creditor's claims after the Court issues its decision on the Trustee's compensation. Further, the Creditor participated at the hearing and voiced no opinions either way as to whether the Debtor or DTN and Nicholson Farms should pay their claims directly or through the Trustee's office. Finally, there was also no evidence presented that the Creditor or the Trustee's office will be incapable of monitoring the direct payments made by DTN and Nicholson Farms.

---

[4] Despite the Trustee's argument that a distinction should be drawn between allowing direct payments by the Debtor versus DTN and Nicholson Farms, the Court highly doubts the Trustee would object to those entities paying the claims if the payments were being processed through the Trustee's office and disbursed to the Creditor.

The substance of the parties' arguments is focused more on the balance of harms between the Debtor and the Trustee's office, which include the monetary obligations the Debtor would face if he were required to pay all of the secured claims through the Trustee's office versus those the Trustee's office would face if DTN and Nicholson Farms were allowed to pay the Creditor directly. After a review of Proofs of Claims 5-2 and 6-2 filed by the Creditor, the Court sees the monetary benefit the Trustee's office would receive if the Debtor or DTN and Nicholson Farms were required to pay those claims in full through its office. The Court cannot, however, saddle one Debtor and two entities with the obligation of funding the entire Trustee's office. Based on the rough numbers also adduced at the hearing, requiring the Debtor to pay Trustee's compensation on the entire secured claims in Classes 3.2 and 3.3 would greatly impact the ability to fund a feasible plan for this Debtor or any farmer. The Debtor's proposal to pay approximately $140,000.00 on his homestead in Class 3.2 through the Trustee's office, combined with paying the remainder of the classes of claims (Classes 1, 2, 3.1, 4, 5.1, 5.2, and 6) through the Trustee's office, is more than reasonable to this Court.

The Court's ruling may require some additional accounting by the parties in terms of bifurcating the amounts the Debtor must pay through the Trustee's office and the amounts DTN and Nicholson Farms will pay directly. But this fact alone does not dissuade the Court that its ruling is correct. Based on the above, it is therefore ORDERED that

(1) The Trustee's *Objection to Chapter 12 Plan of Reorganization* (Dkt. #32) is OVERRULED as to his compensation only;

(2) The nondebtor, third-party entities, DTN and Nicholson Farms, shall be allowed to pay the Creditor, Bank of Okolona, directly for the portion of the Creditor's claims secured by those entities' collateral; and

(3) The Trustee shall not receive any statutory compensation on direct payments made by DTN and Nicholson Farms referenced in (2) for Classes 3.2 and 3.3.

##END OF ORDER##

**SO ORDERED,**



Selene D Maddox

Judge Selene D. Maddox

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI (ABERDEEN)

| | |
|---|---|
| IN RE:   **DAREL WAYNE NICHOLSON**<br>**DBA BIG D CONTRACTORS, LLC**<br>**DBA DTN CATTLE FARM, LLC** | **CASE NO. 20-10869-SDM**<br>**Chapter 12** |

### AGREED ORDER RESOLVING
### BANK OF OKOLONA'S OBJECTION TO CONFIRMATION OF
### DEBTOR'S CHAPTER 12 PLAN OF REORGANIZATION [Dkt. 33]

On consideration before the Court is the objection of Bank of Okolona (hereafter "BOO" or

"Bank") to confirmation (the "Objection") [Dkt. 33] of the Chapter 12 Plan of Reorganization

("Plan") [DKT. 24] filed by the Debtor, Darel Wayne Nicholson ("Nicholson") dba Big D

Contractors, LLC ("Big D") dba DTN Cattle Farm, LLC ("DTN") (collectively the "Debtor"); the

parties hereto having reached a compromise and settlement regarding their respective positions, the

Chapter 12 Trustee ("Trustee") having no objection to the agreement reached between BOO and the

Debtor, and the Court having considered same to be well taken, hereby approves the parties'

settlement and agreement as follows, to-wit:

      1.    This Court has jurisdiction over the subject matter herein and the parties hereto

pursuant to 28 U.S.C. § 1334, 11 U.S.C. §§ 502, 506, 1222 and 1225, along with other related

statutes and rules. This is a core proceeding as defined by 28 U.S.C. §157(b)(2)(A), (B) (L) and (O).

1202339

2.     BOO is a secured creditor and party in interest in this Chapter 12 case. BOO made two (2) loans to Nicholson and DTN, which are secured by property of the Debtor's estate. BOO made a separate loan to Nicholson's daughter, which is also secured by property of the Debtor's estate, as further set forth below.

## THE DTN CATTLE FARM, LLC EQUIPMENT LOAN & HOME LOAN

3.     On February 10, 2020, Nicholson, individually, and DTN, by and through its managing member, Nicholson, executed a Commercial Promissory Note (the "DTN/Home Note") in the amount of $517,794.00 payable to BOO. The DTN/Home Note is payable in two (2) annual payments of $105,321.10 each beginning on February 10, 2021, with a single final "balloon" payment in the amount of $386,817.43 due on February 10, 2023 (the "DTN/Home Note Maturity Date"). The per annum interest rate under the DTN/Home Note is 6.00%. A copy of the DTN/Home Note is attached to the Objection as Exhibit "1" and incorporated herein by reference thereto.

4.     To secure the indebtedness due under the DTN/Home Note, Nicholson, individually, and DTN,  by and through its managing member, Nicholson, contemporaneously executed an Agricultural Security Agreement (the "DTN Security Agreement") for the benefit of BOO, granting unto same a valid and first perfected security interest in Equipment which includes, but is not limited to, "all equipment and fixtures of every nature and description whatsoever, now owned or hereafter acquired by Debtor, wherever located, including machinery, manufacturing equipment, shop equipment, furnishings, furniture, record keeping equipment, and vehicles, together with all accessions, parts, embedded software, attachments, accessories, tools, and dies, or appurtenances thereto intended for use in connection therewith, and all substitutions, betterments, and replacements thereof and additions thereto." In addition, the Debtor granted BOO a valid and first perfected security interest in the following specific

collateral: (1) New Holland Tractor, Model 360 S/N 07799; (2) CIH Combine Model 7240 S/N 31022; (3) McDon Header Model FD75S S/N 289149-16, with trailer; (4) CIH Planter Model 1245 S/N 052843; (5) CIH 2012 Tractor S/N 19623, with loader; (6) 2004 Freightliner Model Columbia S/N 79206; and (7) 2004 International Model 9900 S/N 080289 (collectively the "DTN Equipment" or "DTN Collateral"). A copy of the DTN Security Agreement is attached to the Objection as Exhibit "2" and incorporated herein by reference thereto. A copy of the UCC-1 Financing Statement evidencing BOO's first valid and perfected security interest in the DTN Collateral is attached to the Objection as Exhibit "3" and incorporated herein by reference thereto.

5.     To further secure the indebtedness due under the DTN/Home Note, Nicholson, individually, contemporaneously executed a Commercial Deed of Trust ("Deed of Trust") for the benefit of BOO, encumbering certain real property commonly known as 32958 Highway 45 North, Nettleton, Mississippi, which serves as Nicholson's residence. A copy of the Deed of Trust, duly recorded in the Office of the Chancery Clerk on Monroe County, Mississippi on February 13, 2020, Instrument Number 2020000830, is attached to the Objection as Exhibit "4" and incorporated herein by reference thereto. The legal description to the referenced real property is attached hereto and incorporated herein by reference as Exhibit "A."

## THE NICHOLSON FARMS, LLC EQUIPMENT LOAN

6.     On February 10, 2020, Nicholson, individually, and Nicholson Farms, LLC[1] ("Nicholson Farms"), by and through its managing member, Nicholson, executed a Commercial Promissory Note (the "Nicholson Farms Note") in the amount of $691,270.00 payable to BOO. The Nicholson Farms Note is payable in one (1) annual payment of $736,837.00 due on November 15, 2020 (the "Nicholson Farms Note Maturity Date"). The per annum interest rate

---

[1] Nicholson Farms is not a debtor before this court, but is a "co-debtor," as contemplated by 11 U.S.C. § 1201.

under the Nicholson Farms Note is 6.00%. A copy of the Nicholson Farms Note is attached to the Objection as Exhibit "5" and incorporated herein by reference thereto.

7.     To secure the indebtedness due under the Nicholson Farms Note, Nicholson, individually, and Nicholson Farms, by and through its managing member, Nicholson, contemporaneously executed an Agricultural Security Agreement (the "Nicholson Farms Security Agreement") for the benefit of BOO, granting unto same a valid and first perfected security interest in Equipment which includes, but is not limited to, "all equipment and fixtures of every nature and description whatsoever, now owned or hereafter acquired by Debtor, wherever located, including machinery, manufacturing equipment, shop equipment, furnishings, furniture, record keeping equipment, and vehicles, together with all accessions, parts, embedded software, attachments, accessories, tools, and dies, or appurtenances thereto intended for use in connection therewith, and all substitutions, betterments, and replacements thereof and additions thereto." In addition, the Debtor granted BOO a valid and first perfected security interest in the following specific collateral: (1) JD Tractor Model 4640 S/N 5957R; (2) Versatile Tractor Model 2425 S/N 301301; (3) CIH Tractor S/N 19623, with loader; (4) Branson Tractor Model 5530 S/N 00025; (5) Kilbros Grain Cart Model 1195 S/N 30106; (6) JD Sprayer Model 4730 90' Boom S/N 004680; (7) Case Backhoe Model 580M S/N 402305; (8) JD Bulldozer 450J LGP S/N 126627; (9) Daewood Forklift Model LP S/N 413308; (10) 1993 Terra Gator Spreader Truck Model 1603; (11) Freightliner Truck Columbia Model S/N 79206; (12) International Truck Model 9900 2004 S/N 080289; (13) Harvest Master Hopper Bottom S/N 000179; (14) Harvest Master Hopper Bottom S/N 700893; (15) Rogers Dump Trailer Aluminum S/N 009851; (16) Mcfarlane Harrow 45'; (17) Case Tiller Model 330 Turbo Tiller S/N 049638; (18) Sunflower Disc 1435-22 S/N 0059233; (19) Sunflower Field Cult 5035-36 S/N 0019336; (20) RollACone

1202339

Chizle Plow S/N 10-1370; (21) Great Planes Hipper 12R; (22) Bigham Bros Middle Puller 12R Stack Fold; (23) Red Ball Hooded Sprayer 12R; (24) JD Round Baler 569E S/N 392116; (25) Jay Lor Feed Mixer 4425 S/N 22951-K; (26) Hutchison Auger 13x82; (27) Lowboy Water trailer 4500 Gal with pump; (28) Bionic Blade 10'; (29) JD Back Blade Hyd; (30) W&A Ditcher; (31) Subsoiler; (32) Storage Van; (33) Yamaha Four wheeler Model 700 Big Bear S/N 101856; and (34) Polaris Ranger Model 900 2014 S/N 866569 (collectively the "Nicholson Farms Equipment" or "Nicholson Farms Collateral"). A copy of the Nicholson Farms Security Agreement is attached to the Objection as Exhibit "6" and incorporated herein by reference thereto. A copy of the UCC-1 Financing Statement evidencing BOO's first valid and perfected security interest in the Nicholson Farms Collateral is attached to the Objection as Exhibit "7" and incorporated herein by reference thereto.

## THE TRUCK LOAN

8.    On January 16, 2020, Kimberly Nicholson, Nicholson's daughter, executed a Commercial Promissory Note (the "Truck Note") in the amount of $37,652.74 payable to BOO. The Truck Note is payable in fifty-nine (59) monthly payments of $763.19 each, beginning on February 15, 2020, and one (1) payment of $763.41 due on January 15, 2025 (the "Truck Note Maturity Date"). The per annum interest rate under the Truck Note is 8.00%. A copy of the Truck Note is attached to the Objection as Exhibit "8" and incorporated herein by reference thereto.

9.    To secure the indebtedness due under the Truck Note, Kimberly Nicholson contemporaneously executed a Commercial Security Agreement (the "Truck Security Agreement") for the benefit of BOO, granting unto same a valid and first perfected security interest in one (1) 2018 GMC Sierra bearing VIN 1GT12REY3JF172796 (the "Truck"). A copy

of the Truck Security Agreement is attached to the Objection as Exhibit "9" and incorporated herein by reference thereto. A copy of the State of Mississippi Certificate of Title for a vehicle evidencing BOO's first valid and perfected security interest in the Truck is attached to the Objection as Exhibit "10" and incorporated herein by reference thereto.

10. As evidenced by the referenced certificate of title, the Truck is owned by Nicholson. Furthermore, Nicholson exclusively uses the Truck for his personal and business use, and will pay the Truck Note and modify the terms of same through his Plan and pursuant to the terms of this Agreed Order, as further set forth below.

## THE CHAPTER 12 CASE

11. On February 27, 2020 ("Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 12, Title 11 of the *United States Code*.

12. On April 30, 2020, BOO filed its proof of claim on the DTN/Home Note in the secured amount of $519,326.10 (claim no. 6-2), representing the amount owed under the DTN/Home Note as of the Petition Date.

13. On April 30, 2020, BOO filed its proof of claim on the Nicholson Farms Note in the amount of $240,048.63 (claim no. 5-2), representing the amount owed under the Nicholson Farms Note as of the Petition Date, said claim reflecting $207,000.00 as the secured portion of the claim and $33,048.63 as the unsecured portion of the claim.

## THE CHAPTER 12 PLAN

14. On July 16, 2020, the Debtor filed the Plan. With respect to BOO, the Plan proposes as follows:

> **CLASS 3.1:**
>
> Class 3.1 shall consist of the secured claims of the Bank secured by a 2018 GMC HD2500. In order to pay the secured claims of the Bank, the Debtor will amortize the claim over a

five (5) year period. Payments will be made on an annual basis, with the first payment coming due January 31, 2021, and with a like payment of principal and interest coming due January 31 of the following years until this claim is paid in full. This obligation will bear interest at the rate of 5.10% per annum.

**CLASS 3.2:**

Class 3.2 shall consist of the secured claims of the Bank secured by 32958 Hwy 45 N, in Nettleton, MS and equipment of DTN Cattle Farm. In order to pay the secured claims of the Bank, the Debtor and DTN Cattle Farm will amortize the claim over a fifteen (15) year period, with the indebtedness becoming fully due and payable within seven (7) years. Payments will be made on an annual basis, with the first payment coming due January 31, 2021, and with a like payment of principal and interest coming due January 31 of the following years until this claim is paid in full. This obligation will bear interest at the rate of 5.25% per annum.

**Class 3.3:**

Class 3.3 shall consist of the secured claims of the Bank secured by equipment of Nicholson Farm, a Polaris Ranger and a Yamaha 700. In order to pay the secured claims of the Bank, Nicholson Farm will amortize the claim over a five (5) year period. Payments will be made on an annual basis, with the first payment coming due January 31, 2021, and with a like payment of principal and interest coming due January 31 of the following years until this claim is paid in full. This obligation will bear interest at the rate of 5.10% per annum.

<u>**THE PARTIES' SETTLEMENT AGREEMENT**</u>

15.     To resolve the Objection, the Debtor agrees that when considering the combined value of the DTN Equipment and Debtor's home ($584,000.00 per schedules), the Nicholson Farms Equipment ($186,500.00 per schedules), and the Truck ($38,000.00 per schedules) (combined value per schedules $772,500.00), same exceeds the amount of the combined secured claims of BOO on the DTN/Home Note ($519,326.10), the Nicholson Farms Note ($207,000.00) and the Truck Note ($36,356.00) (total secured claims $762,682.10). As such, the Debtor agrees that BOO is an over secured creditor as contemplated by 11 U.S.C. § 506 and accordingly its claims have

continued to accrue fees, interest and costs which are recoverable by BOO as set forth below. In addition, the Debtor agrees that the DTN Equipment, the Nicholson Farms Equipment, Nicholson's home, and the Truck are cross collateralized and all secure Nicholson's obligations with BOO, as set forth in the loan documents attached to the Objection. To further resolve the Objection, the parties hereto agree that the Debtor's Plan is hereby amended to treat the claims of BOO with respect to the DTN/Home Note (claim no. 6-2), the Nicholson Farms Note (claim no. 5-2), and the Truck Note as follows:

### CLASS 3.1:

Class 3.1 shall consist of the secured claim of the Bank of Okolona secured by a 2018 GMC Sierra 2500 HD bearing VIN 1GT12REY3JF172796 (the "Truck"). The Debtor is of the opinion that the Truck is worth more than the amount owed to Bank of Okolona on the Truck Note. The amount of the Bank of Okolona claim on the Truck Note, including interim period interest to which Bank of Okolona is entitled at the contract rate of 8.00% up through and including September 22, 2020 (the date of the second scheduled confirmation hearing), is $33,450.45.

### TREATMENT:

Upon confirmation of the Chapter 12 Plan and in full satisfaction of Bank of Okolona's Secured Claim on the Truck Note, the Debtor will directly pay to Bank of Okolona its Secured Claim in the agreed upon amount of $33,450.45 amortized over a period of five (5) years at a rate of 5.75% per annum in 59 monthly payments of $643.04 beginning October 25, 2020, and on the 25th day of each month thereafter, with 1 final payment of $643.39 due on September 25, 2025, the maturity date. Upon receipt of the final payment due on September 25, 2025, Bank of Okolona's Allowed Secured Claim on the Truck Note will be paid in full.

### CLASS 3.2:

Class 3.2 shall consist of the secured claim of the Bank of Okolona secured by the DTN Collateral and the Debtor's home located at 32958 Hwy 45 N, in Nettleton, MS (claim no. 6-2). The Debtor is of the opinion that the DTN Collateral and Debtor's home are worth more than the amount owed to

Bank of Okolona on the DTN/Home Note. The amount of the Bank of Okolona claim on the DTN/Home Note, including interim period interest to which Bank of Okolona is entitled at the contract rate of 6.00% up through and including September 22, 2020 (the date of the second scheduled confirmation hearing), including Bank of Okolona's attorney's fees and expenses incurred in this Chapter 12 case, is $541,045.28.

**TREATMENT:**

Upon confirmation of the Chapter 12 Plan and in full satisfaction of Bank of Okolona's Secured Claim on the DTN/Home Note, the Debtor will pay to Bank of Okolona its Secured Claim in the new agreed upon amount of $541,045.28 amortized over a period of fifteen (15) years at a rate of 5.25% per annum with a balloon payment due in seven (7) years resulting in six (6) equal annual installments in the sum of $51,323.10 and one final balloon payment in the sum of $379,655.65. The first three annual payments in the amount of $51,323.10 each will be paid through a combination of direct payments made by the Debtor and nondebtor third party entity DTN and the Trustee. Specifically, the Trustee shall be entitled to compensation based on the value of the Debtor's home, $140,000.00, which makes up a portion (26%) of the Bank of Okolona's Class 3.2 claim. The Debtor's three annual payments to the Trustee shall be in the sum of $14,826.67 each ($13,344.00 of the annual payment amount represents 26% of the annual payment owed to Bank of Okolona and is the amount the Trustee's office will pay to Bank of Okolona and $1,482.67 of the annual payment amount represents the Trustee's compensation on the annual payment which the Trustee shall retain) and shall be due, to the Trustee, on or before the Trustee's Disbursement Date, which shall be on or before January 31, 2021, with the next two (2) annual installments in the same amount due, to the Trustee, on or before January 31, 2022 and January 31, 2023. The remaining portion of the first three annual payments in the sum of $37,979.10 each shall be paid directly by the Debtor and nondebtor third party entity DTN and shall be due to Bank of Okolona on or before January 31, 2021, January 31, 2022, and January 31, 2023, respectively. The three (3) remaining annual installments in the sum of $51,323.10 shall be payable "directly" to Bank of Okolona by the Debtor and nondebtor third party entity DTN on or before January 31, 2024, January 31, 2025, and January 31, 2026, respectively. A balloon payment of all unpaid principal and interest due under the DTN/Home Note in the sum of $379,655.65 shall be payable "directly" by the Debtor

1202339

and nondebtor third party entity DTN to Bank of Okolona on or before January 31, 2027. Upon receipt of the balloon payment, which shall be due on or before January 31, 2027, Bank of Okolona's Allowed Secured Claim on the DTN/Home Note will be paid in full.

The agreed upon new amount of the DTN/Home Note, $541,045.28, is comprised of the payoff on the DTN /Home Note as of September 22, 2020 (the date of the second scheduled confirmation hearing), $536,945.28, plus $4,100.00 representing the reasonable attorney's fees incurred by the Bank of Okolona in this Chapter 12 case.

## CLASS 3.3

Class 3.3 shall consist of the secured claim of the Bank of Okolona secured by the Nicholson Farms Collateral (claim no. 5-2). The Debtor is of the opinion that the Nicholson Farms Collateral is worth more than the amount owed to Bank of Okolona on the Nicholson Farms Note. The amount of the Bank of Okolona claim on the Nicholson Farms Note, including interim period interest to which Bank of Okolona is entitled at the contract rate of 6.00% up through and including September 22, 2020 (the date of the second scheduled confirmation hearing), is $198,883.22.

## TREATMENT

Upon confirmation of the Chapter 12 Plan and in full satisfaction of Bank of Okolona's Secured Claim on the Nicholson Farms Note, the Debtor and nondebtor third party entity, Nicholson Farms, will directly pay to Bank of Okolona its Secured Claim in the agreed upon amount of $198,883.22 amortized over a period of five (5) years at a rate of 5.75% per annum, resulting in four (4) equal annual installments in the sum of $45,260.07 each and one (1) installment in the sum of $45,260.04. The initial annual payment will be due on or before January 31, 2021, with the next four (4) annual installments due on or before January 31, 2022, January 31, 2023, January 31, 2024, and January 31, 2025. Upon receipt of the annual payment due on January 31, 2025, Bank of Okolona's Allowed Secured Claim on the Nicholson Farms Note will be paid in full.

The Debtor (Nicholson, Big D, and DTN) shall provide Bank of Okolona with tax returns beginning with the tax year 2020 and annual financial statements each year during the term of the Plan, the sufficiency of which shall be at the sole discretion of Bank of Okolona, which reserves the right to

request any additional financial information from the Debtor post-confirmation as it deems necessary.

16.     BOO may provide the Debtor and any others who are obligors on loans with the Debtor new loan documents which shall contain terms consistent with the treatment of BOO's claims as set forth in paragraph 15. herein. Thereafter, the Debtor shall execute same within seven (7) days of their presentment and without the necessity of further order of this Court.

17.     Given that the automatic stay shall lift upon the prospective confirmation of the Plan, the Debtor's failure to timely pay any payments due to be paid to the Trustee or BOO shall constitute a default under the confirmed Plan, as well as any pre- or post-confirmation instruments memorializing and facilitating the prospective confirmed Plan. Should such a default occur, BOO may provide a written notice of monetary default to the Debtor, with a copy of same to counsel for the Debtor. If the Debtor fails to timely cure the monetary default by complete payment of same in good and sufficient funds to be received by the Trustee or BOO, as the case may be, within ten (10) days of the date of written notice of default, then BOO may, but shall not be required to, exercise its rights against its collateral as allowed by the referenced instruments, as well as State and/or Federal Law.

18.     The Debtor further agrees that BOO, as an oversecured creditor, is entitled to recoup its reasonable and necessary attorney's fees associated with this case and that same shall be scheduled for repayment as set forth in the treatment of Class 3.2 above.

19.     The terms of this Agreed Order are hereby incorporated into and made a part of the prospective confirmation order, replacing the provisions contained in the Plan with respect to the claims of BOO.

## END OF ORDER ##

ORDER PREPARED AND SUBMITTED BY:

/s/ James P. Wilson, Jr.
James P. Wilson, Jr. (MSB 10783)
Mitchell, McNutt & Sams, P.A.
P.O. Box 1366
Columbus, MS  39703-1366
(662) 328-2316
jwilson@mitchellmcnutt.com

APPROVED BY:

/s/ Craig M. Geno
Craig M. Geno (MSB 4793)
587 Highland Colony Parkway
Ridgeland, MS  39157
(601) 427-0048
cmgeno@cmgenolaw.com
*Attorney for Debtor*

/s/ Harold J. Barkley, Jr.
Harold J. Barkley, Jr. (MSB 2008)
P.O. Box 5069
Jackson, MS  39296-5069
(601) 362-6161
hjb@hbarkley13.com
*Chapter 12 Trustee*

# EXHIBIT "A"

**TRACT I:**

Commencing at the Southwest corner of Section 25, Township 12 S., Range 6 E., Monroe County, Mississippi and run thence North along the West line of said Section 25 for 3118.39 feet; run East for 50 feet to a point on the East right of way line of U.S. Highway No. 45 for a point of beginning; thence run South 00 degrees 07 minutes 55 seconds East along the East line of said highway for 40.0 feet to an iron stake; thence run South 89 degrees 18 minutes 24 seconds East for 456.0 feet to an iron stake; thence run North 02 degrees 09 minutes 35 seconds East for 250 feet to an iron stake in an old fence line; thence run North 89 degrees 18 minutes 24 seconds West for 466.0 feet to an iron stake on the East right of way line of said Highway No. 45; thence run South 00 degrees 07 minutes 55 second East along said highway right of way line for 210.0 feet to the point of beginning, containing two and sixty-four hundredths (2.64) acres, more or less, and being situated in the West Half of the West Half of Section 25, Township 12 S., Range 6 E., Monroe County, Mississippi.

SUBJECT to a driveway easement for ingress and egress as described in Quitclaim Deed dated October 7, 2005 and recorded in Instrument # 2005-6524 of the land records of the Monroe County Chancery Clerk's Office.

LESS AND EXCEPT: 0.12 acre conveyed by Darel Nicholson and Jennifer Nicholson to Mississippi Transportation Commission described in Deed dated December 9, 1992 and recorded in Deed Book 354 at page 83 of the land records of the Monroe County Chancery Clerk's Office.

AND

**TRACT II:**

Commencing at the Southwest corner of Section 25, Township 12 S., Range 6 East, and run thence due North along section line 53.46 chains (3,528.36 feet), thence run due East 50 feet to a point on the East right of way line of Highway No. 45; thence run due East 250 feet to the point of beginning, which point is the Northeast corner of a lot owned by Grady H. Kimmery; from said point of beginning thence run due East 436 feet; thence run South 200 feet; thence run due West 436 feet; thence run North 200 feet to the Point of Beginning, containing two (2.0), acres, more or less, lying an being in the Northwest Quarter of the Northwest Quarter of Section 25, Township 12, Range 6 East, Monroe County, Mississippi.

LESS AND EXCEPT 0.06 acre sold to Mississippi Transportation Commission by deed dated November 18, 1992 and recorded in Monroe County Deed Book 353 at page 49.

AND

**TRACT III:**

Commencing at the Southwest Corner of Section 25, Township 12 South, Range 6 East, Monroe County, Mississippi. Run thence North along the Section Line 2908.39 feet to a point; thence run East 50 feet to the Point of Beginning. Thence run North 89 degrees 53 minutes 24 seconds East 896.23 feet to a point; thence run North 0 degrees 37 minutes 54 seconds West 210.0 feet to a point;

thence run South 89 degrees 53 minutes 18 seconds West 897.46 feet to a point; thence run South 0 degrees 57 minutes 52 seconds East 210.0 feet to the Point of Beginning. All lying in Section 25, Township 12 South, Range 6 East, Monroe County, Mississippi, and containing 4.2 acres, more or less.

LESS AND EXCEPT: PARCEL NO. 1: Begin at the point of intersection of the South line of grantors property with the present Easterly right of way line of U.S. Highway No. 45 as shown on the plans for State Project No. 96-0002-05-042-10, said South property line extended South 89 degrees 45 minutes West, a distance of 175.1 feet intersects the centerline of survey of State Project No. 96-0002-05-042-10 at Highway Survey Station 144 + 91.93, said point being 2351.4 feet South of and 79.9 feet East of the Northwest Corner of Section 25, Township 12 South, Range 6 East; from said point of beginning run thence North 00 degrees 15 minutes West along said present Easterly right of way line, a distance of 124.1 feet to a North line of grantors property, said North property line extended South 89 degrees 45 minutes West, a distance of 175.1 feet intersects the centerline of survey of said project at Station 146 + 16.07; thence North 89 degrees 45 minutes East along said North property line, a distance of 24.9 feet to a line that is 200 feet Easterly of and parallel with the centerline of survey of said project; thence South 00 degrees 16 minutes East along said parallel line, a distance of 124.1 feet to the South line of grantors property; thence South 89 degrees 45 minutes West along said South property line, a distance of 24.9 feet to the point of beginning and containing 0.07 acres, more or less.

ALSO LESS AND EXCEPT: PARCEL NO. 2: Begin at the point of intersection of the North line of grantors property with the present Easterly right of way line of U.S. Highway No. 45 as shown on the plans for State Project No. 96-0002-05-042-10, said North property line extended North 89 degrees 09 minutes West, a distance of 175.3 feet intersects the centerline of survey of State Project No. 96-0002-05-042-10 at Highway Survey Station 149 + 29.42, said point being 1917.3 feet South of and 78.0 feet East of the Northwest corner of Section 25, Township 12 South, Range 6 East; from said point of beginning run thence South 89 degrees 09 minutes East along said North property line, a distance of 24.7 feet to a line that is 200 feet Easterly of and parallel with the centerline of survey of said project; thence South 00 degrees 16 minutes East along said parallel line, a distance of 100.0 feet to a South line of grantors property; thence North 89 degrees 09 minutes West along said south property line, a distance of 24.8 feet to the present Easterly right of way line of said U.S. Highway No. 45; thence North 00 degrees 15 minutes West along said present Easterly right of way line, a distance of 100.0 feet to the point of beginning and containing 0.06 acres, more or less, and

PARCEL NO. 1 AND PARCEL NO. 2 contain an aggregate of 0.13 acres, more or less, and being situated in the Southwest Quarter of the Northwest Quarter of Section 25, Township 12 South, Range 6 East, Monroe County, Mississippi.

ALSO

TRACT IV:

Commencing at the Southwest corner of Section 25, Township 12 South, Range 6 East, Monroe County, Mississippi and run thence North along the West line of said Section 25 for 3118.39 feet; thence run East for 50 feet to a point on the East right of way line of U.S. Highway No. 45;

thence run South 89 degrees 18 minutes 24 seconds East for 457.60 feet to an iron stake for a point of beginning; thence run South 89 degrees 18 minutes 24 seconds East 415.27 feet to an iron stake in an old fence line; thence run North 00 degrees 16 minutes 21 seconds West along said fence line for 210.0 feet to an iron stake; thence run North 89 degrees 18 minutes 24 seconds West for 405.44 feet to an iron stake; thence run South 02 degrees 09 minutes 35 seconds West for 210.0 feet to the point of beginning, containing one and ninety-seven hundredths (1.97) acres, more or less, and being situated in the West Half of the West Half of Section 25, Township 12 South, Range 6 East, Monroe County, Mississippi.

ALSO A DRIVEWAY EASEMENT FOR INGRESS AND EGRESS TO THE ABOVE DESCRIBED PROPERTY, easement more particularly described as follows, to-wit:

Commencing at the Southwest corner of Section 25, Township 12 South, Range 6 East, Monroe County, Mississippi and run thence North along the West line of said Section 25 for 3118.39 feet; thence run East for 50 feet to a point on the East right of way line of U.S. Highway No. 45; thence run South 00 degrees 07 minutes 55 seconds East along said highway right of way line for 15 feet to an iron stake for a point of beginning; thence run South 00 degrees 07 minutes 55 seconds East along said highway right of way line for 25 feet to an iron stake; thence run South 89 degrees 18 minutes 24 seconds East for 456 feet to an iron stake; thence run North 02 degrees 09 minutes 35 seconds East for 210.0 feet to an iron stake; thence run North 89 degrees 18 minutes 24 seconds West for 8.70 feet to an iron stake; thence run South 07 degrees 03 minutes 40 seconds West for 186.37 feet to an iron stake; thence run North 89 degrees 18 minutes 24 seconds West for 434.0 feet to the point of beginning; being situated in the West Half of Section 25, Township 12 South, Range 6 East, Monroe County, Mississippi.

## Payment Schedule of Darel Wayne Nicholson 20-10869-SDM

January 31, 2021 - $42,000.62
January 31, 2022 - $42,000.62
January 31, 2023 - $42,000.62


## Calculation of payment

Bank of Okolona - $13,344.00 annual (January 2021-January 2023)
De Lage Landen - $15,602.47 annual (January 2021-January 2023)
Kubota - $1,827.99 annual (January 2021-January 2023)
Kubota - $3,526.10 annual (January 2021-January 2023)
Unsecured Creditors - $3,500.00 annual (January 2021-January 2023)

Trustee Compensation/Expense – $4,200.06 annual (January 2021-January 2023)

**EXHIBIT "B"**

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

IN RE: **DAREL WAYNE NICHOLSON**                      **CHAPTER 12**
             **Debtor**                                          **CASE NO. 20-10869-SDM**

## <u>CHAPTER 12 PLAN OF REORGANIZATION</u>

COMES NOW the Debtor, Darel Wayne Nicholson (the "Debtor"), and submits this his

Chapter 12 Plan of Reorganization (the "Plan") for consideration of the Court and the creditors

herein:

### <u>DEFINITIONS</u>

1.     "Debtor" shall mean Darel Wayne Nicholson.

2.     "Bank" shall mean Bank of Okolona.

3.     "De Lage Landen" shall mean De Lage Landen Financial Services, Inc.

4.     "Kubota" shall mean Kubota Credit Corporation.

5.     "Unsecured Creditors" shall mean all creditors of the Debtor who hold claims for

unsecured debts, liabilities, or demands.

6.     "Plan" shall mean this Plan of Reorganization as set forth herein.

7.     "Court" shall mean the United States Bankruptcy Court for the Northern District of

Mississippi, and the United States Bankruptcy Judge presiding in the Chapter 12 case of the Debtor.

8.     "Effective Date of Confirmation" shall mean sixty (60) days after the date upon

which the Order confirming this Plan shall become final and non-appealable.

### <u>CLASSIFICATION OF CLAIMS</u>

1.     Class 1 claims shall be all expenses of administration of the Debtor as defined by §

507(a)(1) for which application for allowance is filed prior to the Effective Date of Confirmation,

or such date or dates as the Court determines, as the same are allowed, approved, and ordered to be

**EXHIBIT "C"**

paid by the Court. Any claim filed by a creditor as an administrative claim entitled to priority under § 507(a)(1) shall be treated as an unsecured claim without priority until the Court allows the claim as being entitled to priority under § 507(a)(1).

2.      Class 2 shall be the priority claims, if any.

3.      Class 3.1 shall consist of the secured claims of the Bank secured by a 2018 GMC HD2500.

4.      Class 3.2 shall consist of the secured claims of the Bank secured by 32958 Hwy 45 N, in Nettleton, MS and equipment of DTN Cattle Farm.

5.      Class 3.3 shall consist of the secured claims of the Bank secured by equipment of Nicholson Farm, a Polaris Ranger and a Yamaha 700.

6.      Class 4 shall consist of the secured claims of De Lage Landen secured by a 220 Hyundai Excavator.

7.      Class 5.1 shall consist of the secured claims of Kubota secured by a caddy and cutter.

8.      Class 5.2 shall consist of the secured claims of Kubota secured by a bushhog.

9.      Class 6 shall consist of all unsecured claims.

## PAYMENT TO CHAPTER 12 TRUSTEE AND DEBTOR'S ATTORNEY

Keeping in mind the opinion Judge Woodard rendered in the *George Speir* case with respect to compensation of the Chapter 12 Trustee, and keeping in mind that Plan success can sometimes depend upon the amount of payment to the Chapter 12 Trustee and the Debtor's professionals, the Debtor proposes to pay Trustee compensation on the claims in Classes 3.2 and 3.3, to the extent this Debtor pays a portion of those claims; and Classes 4, 5.1, 5.2 and 6.

The Debtor shall pay the allowed fees and expenses of his attorneys, as determined by the Court and authorized in conjunction with Class I of the Plan.

-2-

## DESCRIPTION OF THE PLAN AND FUNDING OF THE PLAN

The funding of the Debtor's obligations, under this Plan, and under the treatment proposed by the Debtor to the secured creditors, shall be from the Debtor's farming operations and that of his affiliates.

## LIQUIDATION ANALYSIS

The Debtor is of the opinion that the liquidation of his homestead would not produce any benefit for unsecured creditors because any equity in it would not be over and above the Debtor's $75,000 homestead exemption.

With respect to the Debtor's farm equipment, the Debtor points out that used farm equipment is at an unprecedented low due to many factors, most of which are beyond the Debtor's (or any purchasers of equipment) control including but not limited to, the situation involving the tariffs on American farm goods, an excess of used farm equipment on the market due to droughts in some areas and floods in others, lack of laborers in the industry, in general, and, specifically, with respect to meat packing plants, and the packing and shipping of fruit and vegetable commodities. Auctions have produced shockingly low values for farm equipment across the South in recent auctions. Accordingly, Debtor does not believe that his farm and farm-related equipment would yield more than one-half of the value ascribed to it by the Debtor in his Schedules if it were liquidated, especially at this time of year.

## TREATMENT OF CLAIMS

Class 1.    All Class 1 claims will be paid in full on the Effective Date of Confirmation, as authorized and approved by the Court, outside the Plan.

Class 2.        The Class 2 priority claims, if any, shall be paid within sixty (60) months from the date of the order confirming the Chapter 12 Plan, with interest at the applicable statutory rate for governmental entities.

Class 3.1.        Class 3.1 shall consist of the secured claims of the Bank secured by a 2018 GMC HD2500. In order to pay the secured claims of the Bank, In order to pay the secured claims of the Bank, the Debtor will amortize the claim over a five (5) year period. Payments will be made on an annual basis, with the first payment coming due January 31, 2021, and with a like payment of principal and interest coming due January 31 of the following years until this claim is paid in full. This obligation will bear interest at the rate of 5.10% per annum.

Class 3.2.        Class 3.2 shall consist of the secured claims of the Bank secured by 32958 Hwy 45 N, in Nettleton, MS and equipment of DTN Cattle Farm. In order to pay the secured claims of the Bank, the Debtor and DTN Cattle Farm will amortize the claim over a fifteen (15) year period, with the indebtedness becoming fully due and payable within seven (7) years. Payments will be made on an annual basis, with the first payment coming due January 31, 2021, and with a like payment of principal and interest coming due January 31 of the following years until this claim is paid in full. This obligation will bear interest at the rate of 5.25% per annum.

Class 3.3.        Class 3.3 shall consist of the secured claims of the Bank secured by equipment of Nicholson Farm, a Polaris Ranger and a Yamaha 700. In order to pay the secured claims of the Bank, Nicholson Farm will amortize the claim over a five (5) year period. Payments will be made on an annual basis, with the first payment coming due January 31, 2021, and with a like payment of principal and interest coming due January 31 of the following years until this claim is paid in full. This obligation will bear interest at the rate of 5.10% per annum.

Class 4.    Class 4 shall consist of the secured claims of De Lage Landen secured by a 220 Hyundai Excavator. In order to pay the secured claims of De Lage Landen, In order to pay the secured claims of De Lage Landen, the Debtor will amortize the claim over a five (5) year period. Payments will be made on an annual basis, with the first payment coming due January 31, 2021, and with a like payment of principal and interest coming due January 31 of the following years until this claim is paid in full. This obligation will bear interest at the contract rate of 5.70% per annum.

Class 5.1.    Class 5.1 shall consist of the secured claims of Kubota secured by a caddy and cutter. In order to pay the secured claims of Kubota, In order to pay the secured claims of Kubota, the Debtor will amortize the claim over a five (5) year period. Payments will be made on an annual basis, with the first payment coming due January 31, 2021, and with a like payment of principal and interest coming due January 31 of the following years until this claim is paid in full. This obligation will bear interest at the rate of 5.10% per annum.

Class 5.2.    Class 5.2 shall consist of the secured claims of Kubota secured by a bushhog. In order to pay the secured claims of Kubota, In order to pay the secured claims of Kubota, the Debtor will amortize the claim over a five (5) year period. Payments will be made on an annual basis, with the first payment coming due January 31, 2021, and with a like payment of principal and interest coming due January 31 of the following years until this claim is paid in full. This obligation will bear interest at the contract rate of 0.00% per annum.

Class 6.    The Debtor will pay to Class 6 unsecured creditors a pro rata share of the Debtor's projected disposable income, after payment of costs of operations/administration, priority tax claims, if any, and secured claims, with unsecured creditors receiving distributions commencing on the anniversary date of the Effective Date of Confirmation, over the five year life of the Plan.

## ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is not aware of any executory contracts or unexpired leases that need to be assumed. If he discovers executory contracts or unexpired leases that need to be assumed or rejected, the Plan will be amended to provide for that.

## DISCHARGE

Upon completion of all of the Plan payments, the Debtor shall receive his discharge in accordance with 11 U.S.C. § 1228 of the Bankruptcy Code.

### JURISDICTION

After the Effective Date of Confirmation, the Court shall retain jurisdiction only for such purpose as is necessary for the supervision, enforcement, and fulfillment of this Plan; to consider the rejection or acceptances of executory contracts to consider applications for fees and allowances of professional services; to conduct all adversary and civil proceedings which have been filed with or removed to this Court prior to the Effective Date of Confirmation, and to rule upon objections, if any, to claims filed herein.

This, the 16th day of July, 2020.

Respectfully submitted,

DAREL WAYNE NICHOLSON

By His Attorneys,

LAW OFFICES OF CRAIG M. GENO, PLLC

By: _____
Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\Nicholson, Darel Wayne\Plan\Plan 7-13-20.wpd

## <u>CERTIFICATE OF SERVICE</u>

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic filing transmission and/or U. S. Mail, postage prepaid, a true and correct copy of the above and foregoing to the following:

> Harold J. Barkley, Jr., Esq.
> hjb@hbarkley13.com
>
> Sammye S. Tharp, Esq.
> Sammye.S.Tharp@usdoj.gov

THIS, the _____ day of July, 2020.

_____
Craig M. Geno